IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| TRACEY HARRIS COOMER, | § § | |
| Plaintiff, | § § | |
| v. | § § | 2:18-CV-121-Z-BR |
| MARK ROTH, *et al.*, | § § | |
| Defendants. | § § § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION TO GRANT DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT

Tracey Harris Coomer ("Plaintiff") filed a Complaint pursuant to 42 U.S.C. § 1983. (ECF 3). Plaintiff is currently incarcerated in the Texas Department of Criminal Justice ("TDCJ"). Defendants Andersen, Arnold, Hembree, Hufford, Ivey, Gill, Julie Marguez, Roth and Simmons[1] filed a Joint Motion for Summary Judgment ("MSJ"), Brief in Support and Appendix, asserting multiple defenses as to Plaintiff's claims, including time-bar, immunity, qualified immunity, and other defenses. (ECF 62). Plaintiff filed a Response to the MSJ, arguing that Plaintiff's claims are timely because of a delay in notice during the grievance process. (ECF 69).

The undersigned United States Magistrate Judge is of the opinion that Defendants' Joint Motion for Summary Judgment should be GRANTED, and the Complaint against these

---

[1] On May 10, 2022, the Court ordered the Attorney General to provide the last known address of the sole remaining unserved Defendant, Anthony Marguez (a defendant separate from the Marguez identified above). (ECF No. 44). The Attorney General did provide the address (ECF Nos. 45–46), and the Court entered an order requiring the Marshal's Office to attempt service on Defendant Anthony Marguez. (ECF No. 58). Summons was issued but returned unexecuted on Defendant Marguez. (ECF Nos. 59–60). Thus, the Court cannot complete service on this Defendant and, although Plaintiff is a *pro se* prisoner, the district court has ordered that Coomer must effect service on this Defendant to proceed against him. (ECF 72). However, for the reasons stated in these Findings, Conclusions and Recommendation ("FCR"), the undersigned finds dismissal of charges against Defendant Anthony Marguez appropriate, as these claims are likewise time-barred as outlined in this FCR.

Defendants can be properly DISMISSED with prejudice as time-barred, and in the alternative, DISMISSED because the Defendants are entitled to immunity.

### I.    PROCEDURAL BACKGROUND

On June 22, 2018, the Clerk filed Plaintiff's civil rights Complaint. (ECF 1 at 1). Plaintiff asserts that he placed the Complaint in the prison mail system for mailing on June 16, 2018, the date the Complaint was signed. (ECF Nos. 1 at 6, 69 at 5) By his Complaint, Plaintiff originally sued seven Defendants. (ECF No. 1 at 3–4). On October 22, 2020, Plaintiff later filed an Amended Complaint. (ECF No. 18). In the Amended Complaint, Plaintiff did not list all original Defendants, but now articulates that his Amended Complaint encompasses claims in his original Complaint. Thus, Defendants (1) Andersen, (2) Arnold, (3) Hembree, (4) Hufford, (5) Ivey, (6) Gill, (7) Julie Marguez, (8) Roth, and (9) Simmons all filed a Joint Motion for Summary Judgment. (ECF No. 62). Defendant Anthony Marguez was not served. Following the original opinion issued by the Court, Defendants David and Chisum were terminated from this lawsuit, as they had no direct personal involvement in the events giving rise to the alleged constitutional deprivations. (ECF Nos. 19–20, 31–32). In total, these twelve Defendants represent all Defendants sued by Plaintiff after the Amended Complaint was filed. (ECF No. 15 at 8).

This Court originally dismissed Plaintiff's Complaint as time-barred, and in the alternative, as frivolous. The Fifth Circuit Court of Appeals remanded this case for further factual development on Plaintiff's claims regarding the issue of time-bar and whether Plaintiff had properly articulated claims for unlawful deprivation of property and retaliation. (ECF Nos. 31–32). Plaintiff's claims against the nine Defendants who remain in the suit and are served with process are considered in light of these Defendants' Joint Motion for Summary Judgment.

## II. PLAINTIFF'S ALLEGATIONS

Plaintiff contends the Defendants committed the following unconstitutional acts:

1. On April 29, 2015, Defendant Simmons originally confiscated personal property from the Plaintiff. Plaintiff alleges he filed a Step 1 grievance against Simmons on May 10, 2015, for following improper procedure in the confiscation of his property. (ECF 69 at 3).

2. After Plaintiff obtained a typewriter ribbon from another inmate, Defendant Simmons questioned Plaintiff concerning this property. Plaintiff continued to file grievances throughout 2015 concerning property seizure and deprivation, including against Defendant Simmons. (ECF 15 at 8).

3. On November 23, 2015, Defendant Anthony Marguez and another TDCJ employee, Chavez, conducted a search of Plaintiff's cell and confiscated additional property. (ECF 69 at 3). Plaintiff submitted several grievances in December of 2015, where claimed Simmons' retaliation was first brought to light. (ECF 15 at 9).

4. On February 23, 2016, Defendant Gill again searched Plaintiff's cell. The following day, the typewriter Plaintiff had previously received in a property settlement (possibly in 2010) was seized. (ECF 69 at 4). Plaintiff, in his Response to the MSJ, lists the date of his Step One grievance concerning this issue as March 3, 2016. The Step 2 grievance is attached to his Amended Complaint (ECF 15-1 at 5–6). It was filed/signed on April 19, 2016, and **was denied on May 19, 2016**. This date is of crucial importance to Plaintiff's claims – both as to the property deprivation and as to the retaliation (the seizure of his property) he claims resulted from the filing of grievances in 2015 against Defendant Simmons and other TDCJ personnel.

5. Plaintiff alleges that Defendant Andersen handled the Step 1 grievance investigation and failed to conduct a proper investigation into the allegations. (ECF 15 at 13). Plaintiff alleges Defendant Julie Marguez at first returned his typewriter but later was part of the conspiracy to take his typewriter away for a second time. (*See id*.).

6. Plaintiff alleges he met in person with Defendant Arnold on March 20, 2016, where a "gentleman's agreement" was reached to return his seized property – the typewriter. (ECF 15 at 14). As a result of this agreement, Plaintiff alleges he was induced to stop filing grievances against Defendant Simmons. (*See id*.).

7. Plaintiff alleges he was continually harassed by Defendant Simmons following the March 2016 meeting with Defendant Arnold. In April of 2016, Plaintiff received his Step 1 grievance denial, approved by Defendant Hufford, which informed him he would not be receiving his typewriter back. (*Id*. at 15).

8. Plaintiff claims that once again Defendants Julie Marquez and Simmons, on May

        10, 2016, retaliated against him by freezing his inmate trust funds. (*Id*. at 17). Plaintiff did not pursue any grievances for this alleged retaliation. Plaintiff claims that the failure of TDCJ to properly disclose the names of these Defendants resulted in his failure to file grievances. (*See id*.).

9. Plaintiff alleges that sometime between February of 2016 and the time when the Step 2 grievance was denied, Defendant Roth made the determination that Plaintiff's typewriter constituted "contraband," and that this determination was in violation of TDCJ policy concerning possession of property. (ECF 15 at 19).

10. Plaintiff claims that on March 9, 2022, Defendants Hembree and Ivey, whom he later added to his Amended Complaint, also participated in the denial of relief, through an OAG investigation that failed to correct improper property seizure procedures on the unit. (ECF 69 at 5).

11. Finally, Plaintiff lists *several* possible dates when he "discovered" that his Step 2 grievance concerning the confiscation of his typewriter *in retaliation* for the filing of grievances would not result in the return of his property. First, in his Amended Complaint, the controlling document for his allegations, Plaintiff states that he learned on May 30, 2016, that the Step 2 grievance was "never processed." (ECF 15 at 17). He later states, for the first time in a Response to the MSJ, that he learned on June 30, 2016, of the denial of his Step 2 grievance, which revealed to him "for the first time" that his property would not be returned. (ECF 69 at 5).

(*See* ECF 1 at 3–4; ECF 18 at 3–4; ECF 15 at 7–12, ECF 69 at 5).

### III. STANDARD OF REVIEW

In a civil case, "[a] party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought." FED. R. CIV. PROC. 56(b). When a summary judgment movant does not have the burden of proof on a claim, it can obtain summary judgment by pointing the court to the absence of evidence on any essential element of the nonmovant's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once it does so, the nonmovant must go beyond its pleadings and designate specific facts demonstrating that there is a genuine issue of material fact for trial. *See id.* at 324–25; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). A genuine issue of material fact exists if the evidence is such that a reasonable trier of fact could return a verdict for

the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmovant's failure to produce proof as to any essential element renders all other facts immaterial. *See TruGreen Landcare, L.L.C. v. Scott*, 512 F. Supp. 2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory where the nonmovant fails to meet this burden. *Little*, 37 F.3d at 1076.

"A qualified immunity defense alters the usual summary judgment burden of proof." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (citing *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). Specifically, when qualified immunity has been raised, "[t]he moving party is not required to meet [his] summary judgment burden for a claim of immunity." *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (internal quotation marks omitted) (citing *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003)). Instead, "[i]t is sufficient that the movant in good faith pleads that [he] is entitled to qualified immunity. Once [he] asserts this affirmative defense, the burden shifts to the plaintiff to rebut it." *Id.* (internal quotation marks and emphasis omitted); *see also McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam) (stating that "[o]nce qualified immunity is asserted, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense"); *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008) (noting that when a government official pleads qualified immunity, the plaintiff must "rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct").

Once the burden of proof shifts to a plaintiff, the plaintiff must negate qualified immunity. *Brown*, 623 F.3d at 253. This burden is not satisfied through a mere showing of "some metaphysical doubt as to the material facts" or by "conclusory allegations," "unsubstantiated

assertions," or "only a scintilla of evidence." *Little*, 37 F.3d at 1075 (internal quotation marks and citations omitted). Instead, on summary judgment, "the plaintiff can no longer rest on the pleadings . . . [, ]and the court looks to the evidence before it. . . ." *McClendon*, 305 F.3d at 323 (internal quotation marks omitted) (citing *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)). However, the court looks to this evidence "in the light most favorable to the plaintiff," *id.*, with "all inferences . . . drawn in his favor." *Brown*, 623 F.3d at 253.

### IV.   MERITS

*Statute of Limitations*

After the further factual development required by the remand order from the Fifth Circuit Court of Appeals, the undersigned recommends dismissal of this lawsuit in its entirety as it is time-barred. Although alternative theories for dismissal of this suit are discussed herein, the only claims Plaintiff acknowledged he exhausted (those concerning the allegedly unlawful confiscation of his typewriter and the retaliation by Defendant Simmons in alleged collusion with other Defendants) were fully known to the Plaintiff at the time the typewriter was confiscated. The grievance process *did* toll the statute of limitations while the process was pending, *but* the denial of the Step 2 grievance, and *not the knowledge of that denial by Plaintiff*, started the "clock" on the statutory period to file his lawsuit. Plaintiff missed that deadline as to all of his claims.

Because there is no federal statute of limitations for actions brought pursuant to Section 1983, federal courts use the personal-injury limitations period of the forum state. *Gartrell v. Gaylor*, 981 F.2d 254, 256 (5th Cir. 1993). Texas has a two-year limitations period for personal-injury actions. *Id.*; *see* TEX. CIV. PRAC. & REM. CODE § 16.003(a).

A Texas prisoner may have "a colorable claim" for tolling of the two-year limitations period during the administrative grievance process based on the Texas "tolling rule that tolls the

running of the limitations period when a person is prevented from exercising a legal remedy by the pendency of legal proceedings." *Anderson v. Livingston*, 394 Fed. App'x 132, 133 (5th Cir. 2010) (citing *Gartrell*, 981 F.2d at 257). Plaintiff does not, however, have a colorable claim for tolling based on this rule. His final grievance was denied on May 19, 2016 (ECF 7-2 at 3, ECF 15-1 at 6), and he did not sign his complaint until June 16, 2018; thus, more than two years passed after his grievance was decided and before he could have handed his complaint to a prison official for mailing. His claim was time-barred even if, as he alleges, he did not receive notice of the denial until June 30, 2016. *See Phillips v. Donnelly*, 216 F.3d 508, 511 n. 3 (5th Cir. 2000) (holding matter was no longer "pending" where it "was decided and settled, regardless of whether [plaintiff] had notice of the denial on that date").

Further, the Plaintiff's argument that June 30, 2016, was a "discovery date" for the facts giving rise to this Amended Complaint is not supported by the summary judgment evidence. Plaintiff acknowledges that the "gentleman's agreement" occurred in March of 2016, but he received his first Step 1 denial in April of 2016; thus, he knew then that the agreement would not result in the return of his property. Further, he acknowledges in his Response to the MSJ that he immediately began conducting his own investigation into the denial in April, before he filed his Step 2 grievance. Thus, there is no later "accrual" date after the May 19, 2016, denial of his Step 2 grievance. The tolling period ends there. Finally, he makes no argument why he could not have filed his original Complaint within the two-year time period following the denial of his Step 2 grievance.

*Eleventh Amendment Immunity*

Plaintiff sued Defendants in their official capacities, as well as their individual capacities, for monetary/compensatory damages. (ECF 18 at 3–4). Plaintiff is not requesting declaratory or

injunctive relief, and his claims for relief against Defendants *in their official capacities* are barred by Eleventh Amendment immunity. Eleventh Amendment immunity is an explicit constitutional limitation on the federal judicial power. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984). The Eleventh Amendment restricts federal court jurisdiction only in those cases in which the state is the real party in interest. *Hander v. San Jacinto Junior College*, 519 F.2d 273, 278 (5th Cir. 1975). A suit against an official in his or her official capacity is actually a suit against the state. *Hafer v. Melo*, 502 U.S. 21 (1991); *Sanders v. English*, 950 F.2d 1152, 1158 (5th Cir. 1992). Consequently, Plaintiff's claims against Defendants in their official capacities are foreclosed by the Eleventh Amendment.

*Denial of Grievances and Improper Investigation Claims*

Plaintiff brings claims against Defendants Hembree, Ivey, and Roth for their collective failures to resolve his property deprivation and retaliation claims through the grievance process or the OAG investigation process. (*See* ECF 69 at 5). Plaintiff's claims regarding the inadequate grievance process are frivolous. A prisoner does not have a constitutionally protected interest in having his complaints and grievances resolved to his satisfaction. *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005). Nothing in Plaintiff's Response to the MSJ reflects that these Defendants acted beyond denying Plaintiff the return of his property during the grievance process, and these Defendants were not personally involved in the deprivation of his property.

*Qualified Immunity*

Plaintiff's claims are barred by the statute of limitations; however, even if Plaintiff's claims for property deprivation and retaliation were timely, Plaintiff has not presented any summary judgment evidence to create a fact issue in light of the Defendants' entitlement to qualified immunity. Pursuant to 42 U.S.C. § 1983, private citizens may sue public officials in federal courts

for violations of federal statutory or constitutional rights that those officials have committed against them. *See Monroe v. Pape*, 365 U.S. 167, 171 (1961). However, public officials enjoy an immunity from liability under section 1983 known as *qualified immunity*. When properly applied to public officials, qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Qualified immunity serves several important goals. Perhaps most crucially, courts have expressed a concern over "the deterrent effect that civil liability may have on the willingness of public officials to fully discharge their professional duties." *Sanchez v. Swyden*, 131 F.3d 1144, 1148–49 (5th Cir. 1998) (citing *Pierson v. Ray*, 386 U.S. 547, 555 (1967); *Anderson v. Creighton*, 483 U.S. 635, 638 (1987); *Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982); and *Scheuer v. Rhodes*, 416 U.S. 232, 239–41 (1974)). Qualified immunity therefore counters this deterrent by helping to protect public officials from liability. Additionally, qualified immunity helps to "avoid excessive disruption of government." *Malley*, 475 U.S. at 341 (internal quotation marks omitted). To this end, qualified immunity serves to terminate a claim against a public official as soon as possible in a judicial proceeding, even before discovery, "and permit the resolution of many insubstantial claims on summary judgment." *Id.*; *see Siegert v. Gilley*, 500 U.S. 226, 232 (1991) (quoting *Harlow*, 457 U.S. at 818).

The Supreme Court has articulated a two-part test for determining if a "public official" is entitled to qualified immunity. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). First, a court must determine whether the defendant's conduct violated a federal right. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014). Second, a court must determine "whether the right in question was 'clearly established' at the time of the violation." *Id.* (citing *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).

Regarding the second part, "[g]overnmental actors are shielded from liability for civil

damages if their actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* More precisely, for a violation of clearly established federal rights to occur, "[p]re-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law in the circumstances." *See Pierce v. Smith*, 117 F.3d 866, 882 (5th Cir. 1997) (emphasis in original omitted). If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact. *See Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005) (citing *Malley*, 475 U.S. at 341). In essence, "the salient question . . . is whether the state of the law" at the time of an incident provided 'fair warning' to the defendants 'that their alleged [conduct] was unconstitutional.' *Tolan*, 572 U.S. at 656 (citing *Hope*, 536 U.S. at 741). Finally, in order to qualify as "clearly established," the law in question should not be defined at a "high level of generality" but instead be "particularized to the facts of the case." *White v. Pauly*, --- U.S. ---, 137 S.Ct. 548, 552 (2017).

As stated earlier, a qualified immunity defense alters the usual summary judgment burden of proof. *Brown*, 623 F.3d at 253. If the moving party in a summary judgment motion "plead[s] his good-faith entitlement to qualified immunity, the burden of proof shifts to the non-moving party to rebut it. *See Hathaway*, 507 F.3d at 319. It is a plaintiff's burden to present evidence that a defendant is not entitled to qualified immunity when that defense is raised. *See Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001). However, although "[t]he plaintiff bears the burden of negating qualified immunity, . . . all inferences are drawn in his favor." *Brown*, 623 F.3d at 253.

Plaintiff states that his typewriter was seized unlawfully because he *received* the typewriter in an altered condition from a settlement; thus, the altered condition of the typewriter was not caused by Plaintiff and therefore could not be properly construed as contraband. (ECF 18 at 3–5; ECF 69 at 4–6). Additionally, Plaintiff asserts that the typewriter was originally set to be returned, but his grievance filed against Defendant Simmons resulted in the destruction, rather than return, of his property. (*See id.*). Defendants are entitled to qualified immunity on this claim because Plaintiff's claims do not meet the threshold requirement of any due process claim through government deprivation of a liberty or property interest. *DePree v. Saunders*, 588 F.3d 282, 289 (5th Cir. 2009). "The Supreme Court has adopted a two-step analysis to examine whether an individual's procedural due process rights have been violated. The first question 'asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.'" *Meza v. Livingston*, 607 F.3d 392, 399 (5th Cir. 2010) (internal marks omitted).

Defendants attach summary judgment evidence regarding the seizure and eventual refusal to return Plaintiff's typewriter. (ECF 62-1 at 7–13). The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976); *Crowe v. Smith*, 151 F.3d 217, 230–31 (5th Cir. 1998). Plaintiff did not have a protected entitlement to an altered typewriter that had the capacity to store contraband. Plaintiff's typewriter was determined to be contraband through the proper due process channels. (ECF 62-1 at 7–13). Plaintiff was then allowed to effectuate disposition of it per the property disposition process. (*See id.*).

Finally, Plaintiff has presented no summary judgment evidence to create a fact question on his retaliation claim, even if such claims were not barred by the statute of limitations. To establish

a constitutional violation for a retaliation claim, an inmate must show that he suffered a qualifying adverse retaliatory act. *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006). Plaintiff claims that the confiscation of his typewriter, and the refusal by TDCJ personnel to return said typewriter, was the result of grievances he had previously filed against Defendant Simmons for denial of access to the law library on several occasions. (ECF 18 at 3–5). Plaintiff was allowed to purchase a new typewriter and was not denied access to a typewriter, nor was he denied the opportunity to continue to file grievances. (*See* ECF 1 at 3–4; ECF 18 at 3–4; ECF 15 at 7–12, ECF 69 at 5). Even though Plaintiff alleged a plausible retaliatory intent, even if it were true that Defendant Simmons originally seized the typewriter, the investigation revealed that the typewriter was altered, and that Plaintiff was later allowed access to an unaltered typewriter and the ability to pursue grievances; therefore, the alleged retaliatory act does not rise to the level of a constitutional violation. *See Gibbs v. King*, 779 F.2d 1040, 1046 (5th Cir. 1986) ("a single incident, involving a minor sanction, is insufficient to prove [retaliatory] harassment."). Thus, Plaintiff's retaliation claims also fail to state a constitutional violation, and Defendants are entitled to qualified immunity on these claims.

## V.    <u>RECOMMENDATION</u>

It is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the Joint Motion for Summary Judgment filed by Defendants be GRANTED, and Plaintiff's Amended Complaint as to all served Defendants should be DISMISSED with prejudice. The claims against Anthony Marguez are likewise time-barred, although this Defendant currently remains unserved. Because all claims are subject to dismissal as time-barred, or in the alternative as barred by immunity principles, Plaintiff's Complaint should be DISMISSED with prejudice.

## VI.    INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of these Findings, Conclusions and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED June 22, 2023.

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

### \* NOTICE OF RIGHT TO OBJECT \*

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276–77 (5th Cir. 1988).